ALBANY,
Oct. 1832.

BANK OF TROY *vs.* TOPPING & HOLME.

*Administrators* who have given a note for the debt of their intestate, cannot be made *personally* responsible for the payment thereof, unless it be shewn that they have *assets*, or that *forbearance* was the consideration of the note. Where it is not *proved* that *forbearance* was the consideration of the note, the court will not *infer* such consideration from the mere fact that the note is payable at sixty days after date.

THIS was an action of *assumpsit*, tried at the Rensselaer circuit in June, 1830, before the Hon. JAMES VANDERPOEL, one of the circuit judges.

The plaintiffs declared as the endorsers of a promissory note, given by the defendants to *Keating Rawson* for $4000, bearing date 2d July, 1829, payable sixty days after date. On the trial the note was produced; it was signed thus: "Margaret Topping, administratrix ; John Holme, administrator to the estate of John Topping, dec'd ;" and there were three endorsements upon it; to wit, $2734,95, as received of Phillip Viele, surrogate of the county of Rensselaer, on 1st February, 1830, $200 as received of John Holme on 16th February, 1830, and $200 also received of John Holme on 10th April, 1830. The making and endorsement of the note were admitted, and the plaintiffs rested. The defendants then offered to prove that John Topping died intestate in September, 1828 ; that the defendants took out letters of administration on his estate ; that at the time of the death of the intestate, the plaintiffs held a note drawn by him and endorsed by Keating Rawson for $5000, payable at sixty days ; that the note now produced is the last of five notes given by the defendants as renewals from time to time of the note held by the plaintiffs against the intestate at the time of his death, all of which were signed in the same manner as that now produced, and all endorsed by *Keating Rawson*, the same endorser who was on the note held by the plaintiffs against the intestate at the time of his death ; that the defendants having in due course of administration exhausted the personal estate of the intes-

ALBANY,
Oct. 1832.

Bank of Troy
v.
Topping.

tate, applied to and obtained from the surrogate of the county of Rensselaer an order to sell all the real estate of the intestate; that such real estate was sold, and that the plaintiffs received $2734,95, endorsed on the note, from the surrogate of Rensselaer, as their portion or dividend of the fund produced by such sale; which evidence was objected to and rejected by the judge, and the plaintiffs had a verdict for $939,96, the balance of the note, after deducting the endorsements thereon. The defendants having excepted to the decision of the judge, now moved for a new trial.

*H. P. Hunt,* for the defendants. The note of the defendants was given for the debt of their intestate; and offering to prove that they had no *assets,* they were not liable, although the *promise* was in writing, for there was no consideration for the promise. *Rann* v. *Hughes,* 7 *T. R.* 350, *n. a.* The case of *Ten Eyck and others* v. *Vanderpoel,* 8 *Johns. R.* 120, is directly in point for the defendants; there the defendants, as *administrator* of *Peter Bregan,* deceased, promised to pay the plaintiffs a certain sum of money for value received by *John Bregan* and heirs, and on *demurrer* the court held that the declaration did not state a consideration for the promise. Here the note was also given by *administrators,* and though the want of consideration did not appear on the face of the declaration as in the other case, the defendants offered to prove it, which, as the note remained in the hands of the original parties, they ought to have been permitted to do. 17 *Johns. R.* 304. The plaintiffs are not at liberty to say that *forbearance* was a sufficient consideration; it is not mentioned in the note or averred in the declaration, and without such averment it is unavailable. 5 *East,* 10. *Roberts on Frauds,* 115, 206, 7. 1 *Saund.* 211, *a.* Although the note is payable at sixty days, the court will not thence infer that *forbearance* was the consideration, but rather, as the notes were uniformly given by the defendants in their representative character, that it was an arrangement for the benefit of the plaintiffs, by means of which they received a discount every two months.

*J. P. Cushman,* for plaintiffs. *Forbearance* to sue is a good and sufficient consideration for a note given by *administra-*

*tors* to pay the debt of their intestate. Here forbearance was extended for the period of a year after the death of the intestate, and the note now in suit itself shews a delay in the collection of the debt for sixty days. The *consideration* need not be averred in the declaration; it is enough that it, as well as the fact that the promise was in writing, be shewn on the trial. He cited 7 *T. R.* 350; *Cro. Eliz.* 387, 643; *Yelv.* 550, 11, *n.* 2; *Rolls' Abr.* 33; 2 *Lev.* 122; 1 *Saund.* 210, *n.* 1; *Comyn on Cont.* 229 *to* 231; 1 *Vesey*, 125; 2 *Cowp.* 284, 9; *Cro. Eliz.* 91; 1 *T. R.* 691, 487; 5 *Binney,* 33; 2 *Call,* 263; 5 *Cranch,* 142; 4 *Mass. R.* 108; 5 *id.* 301; 6 *id.* 58; 8 *id.* 162; 4 *Johns. R.* 237; 2 *Brod. & Bing.* 461. Besides, the acceptance of the note of the administrators for the note of the intestate was, according to the ordinary course of banking operations, a re-loan to the administrators of the money originally lent to the intestate.

*By the Court,* SAVAGE, Ch. J. - *Toller,* in his *Treatise on the Law of Executors and Administrators, p.* 464, says an executor may make himself personally liable by his promise to pay a debt of the testator, or answer damages out of his own estate; but such promise must be in writing, and supported by a sufficient consideration; there must be either *assets* in his hands or *forbearance* by the creditor to constitute a consideration. An admission of assets may be implied by the nature of the promise—as if it be accompanied with a declaration that the money is ready, &c. But in case there are no assets, a promise by an executor to pay his testator's debt is *nudum pactum.* Paying interest on a bond is no admission of sufficient assets to pay the principal, nor is a mere submission to arbitration; though a submission of the question of assets in his hands and an award against him would be conclusive against him in that litigation, but not with any other creditor. This is a brief summary of the English cases.

The leading case on this subject is *Rann* v. *Hughes,* 7 *Brown's P. C.* 556. 7 *T. R.* 350, *n.* The declaration stated an indebtedness by the defendant's intestate, his death, leaving sufficient assets, the granting administration to the defendant, the liability of the defendant, and in consideration there-

ALBANY,
Oct. 1832.

Bank of Troy
v.
Topping.

of, his promise to pay. The defendant pleaded the general issue, *plene administravit,* and *plene administravit præter.* On the trial, the first issue was found for the plaintiff and the others for the defendant. After verdict, it must be taken for granted that the promise was proved to be in writing. That case was therefore the same in principle as this. In the king's bench, judgment was given for the plaintiff, but that judgment was reversed in the exchequer chamber, and the latter judgment affirmed in the house of lords. A question was there submitted to the judges, whether a sufficient consideration appeared in the declaration. Ch. Baron Skynner delivered the opinion of the judges at length, in which, among other things, he stated that every man is bound by the law of nature to fulfil his engagements; but the law of England affords no remedy to compel performance of an agreement without sufficient consideration. The fact that the promise is in writing does not supersede the necessity of proving a consideration. If a person indebted in one right, in consideration of forbearance for a particular time, promise to pay in another right, that forbearance will constitute a sufficient consideration; but if one promise to pay upon request what he was liable to pay upon request in another right, no advantage or convenience is gained by the promissor to constitute a consideration for such promise. In the case of *Treevivian* v. *Hewell, Cro. Eliz.* 91, the point decided is, that if an executor having sufficient assets promises to pay, the fact of his having sufficient assets is a sufficient consideration for the promise. The cases of *Atkins* v. *Hill* and *Hawks* v. *Saunders, Cowp.* 284, 289, both support the doctrine that a promise by an executor to pay a legacy, founded upon the fact of his having assets, is a valid promise. Such, I apprehend, is the doctrine of all the cases. In an action against him in the character of executor, to recover a demand out of the testator's estate, a promise by the executor is a mere *nudum pactum* if there be no assets. 1 *Saund.* 210, *n.* 2 *Comyn on Contr.* 431, concludes an examination of the cases on this point, by saying that though the executor promise upon sufficient consideration, yet by the statute of frauds, the promise, to be valid, must be in writing; but a bare promise to pay by an ex-

ecutor does not make him liable to pay out of his own estate, but he is chargeable only as executor and to the extent of assets in his hands, as he would have been if no such promise had been made; and it makes no difference that such promise is in writing. The cases which have been referred to shew, 1. That every promise requires a sufficient consideration to support it; 2. That the promise of an executor to pay absolutely and to bind him personally, not only requires a consideration, but the promise, to be binding, since the statute of frauds, must be in writing; 3. That sufficient assets in the hands of an executor constitute a sufficient consideration for such a promise; and 4. That forbearance to sue is also a sufficient consideration. Assuming these principles to constitute the law of this case, had the plaintiffs any right to recover? The defendants had given a promissory note, which, since the statute of Anne, imports a consideration so far as to relieve the plaintiff from stating any consideration in his declaration, or proving any in the first instance; but it is well settled, as between the parties to a note, that the consideration may be inquired into, and if the defendant shews a want of consideration, the plaintiff cannot recover.

In the case of *Ten Eyck* v. *Vanderpoel*, 8 *Johns. R.* 120, the defendant, as administrator, promised to pay the amount of the note for value received, by J. B. and his heirs; it was held on demurrer that there was no consideration for the promise. And in *Shoonmaker* v. *De Witt*, 17 *Johns. R.* 304, it is expressly adjudged, that between the original parties the consideration of a promissory note may be enquired into; and if there is a want of consideration, the note cannot be enforced at law. In this case the defendants offered to prove that they had no assets except what had been applied, and therefore there was no consideration for their promise beyond the amount which had been paid. In the case last cited it was also decided by this court that a promise by an executor to pay is not binding, unless he has assets, and that a note given by executors by way of submission to arbitration, was not binding, unless there were assets in the executor's hands. When a submission has been made by *bond*, the executor is liable, not only because a seal imports a consideration, for a promissory note imports a consideration also, but also because

when a person has executed an instrument under seal, he shall not be permitted to disprove the consideration. Both the bond and note import assets, and of course a sufficient consid- eration : the consideration of the bond cannot be explained ; that of the note may, as between the original parties and all parties having notice of the consideration. The defendants in this case having shewn, or what is the same thing on this motion, offered to shew, that they had fully administered, and had no assets in their hands, there was no consideration for their promise ; " for such promises," says Lord Hardwicke, " must be understood with reference to assets, otherwise men might be drawn in." 1 *Ves. sen.* 126. From the offer in this case it is apparant that the plaintiffs do not stand in a situation to exclude the question of consideration ; they are endorsees of the note, but the note being endorsed for the accommoda- tion of Topping originally, and the debt being his, the trans- action was between the plaintiffs and Topping ; they paid no value for the note to Rawson, the endorser.

The question of forbearance does not properly arise on this record. No such consideration was shewn and the court cannot infer it from the fact that the note is payable sixty days after date.

It was contended, upon the argument, that this was like the case of a guardian who gave a note for his ward, and was holden personally responsible, on the ground that the debt of the ward was discharged by the guardian's note. The case of *Thatcher* v. *Dinsmore*, 5 *Mass. R.* 301, was cited to support the proposition. In that case the defendant as guardian to A. L. an insane person, promised to pay the plaintiff a certain sum of money. The notes were given for just debts of the ward, and the defendant was his guardian. After the notes were payable, and before suit brought, A. L. was restored to his reason, and the defendant discharged from his guardian- ship. There was a verdict for the plaintiff, subject to the opin- ion of the court. That opinion was pronounced by Chief Justice Parsons. It had been objected on the argument that there was no consideration for the promise ; in answer to which, the learned judge says that the notes were given for a debt which the defendant was bound to pay, if he had assets,

<div style="float:right">

</div>

which it was not denied he had ; that a note for value received was a promise for a legal consideration, though as between the original parties the promissor might shew that none was received. And he says it has long been settled as law in that state, that a negotiable note given for a simple contract debt extinguishes such debt. He therefore argued that the defendant was liable, as by his note the plaintiffs' debt against the ward was discharged. That case is no authority here, because the reasons are not applicable. A promissory note given in this state for a simple contract debt does not absolutely discharge such debt ; the creditor may still prosecute upon the original consideration, and may recover upon producing and cancelling the note. In that case also it appears that the defendant had assets. In the case now under consideration the plaintiffs lost nothing by taking the defendants' notes for the note of their intestate ; they might at any time have prosecuted the defendants as administrators for the money lent to their intestate, and recovered judgment, and thus have obtained any preference which the law would then have given them.

On the whole case, therefore, I am of opinion that the facts offered in evidence were a bar to a recovery against the defendants in their individual capacity, and that a new trial should be granted.